UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEAN ALLAN ROBINSON,

        Petitioner,               Case No. 1:08-cv-1208

v.                                   Honorable Janet T. Neff

BLAINE C. LAFLER,

        Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Factual Allegations**

Petitioner was convicted by a jury on January 29, 2004 of one count of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, and one count of first-degree home invasion, MICH. COMP. LAWS § 750.110a(2). He was sentenced on February 23, 2004 in the Newaygo County Circuit Court to 16 to 36 years and 10 to 40 years, respectively.

Petitioner timely filed an appeal raising two grounds to the Michigan Court of Appeals, and it was denied on July 26, 2005. He then sought leave to appeal from the Michigan Supreme Court and was denied on January 30, 2006. On July 26, 2006, Petitioner filed a motion for relief from judgment under MICH. CT. R. 6.502, which was denied by the Newaygo County Circuit Court on August 21, 2006. Petitioner then sought leave to appeal from the Michigan Court of Appeals and the Michigan Supreme Court, which was denied on March 10, 2008 and September 22, 2008, respectively. Petitioner timely filed his application for habeas relief with this court on December 18, 2008.

Petitioner's habeas application raises the same ground as raised in his motion for relief from judgment – that he was given ineffective assistance of counsel due to a conflict of interest. Petitioner alleges that his attorney, Mark Schropp, previously represented Dawn Wamser, who was the victim in Petitioner's case. According to the petition, Petitioner was charged with a prior assaultive crime against Wamser. (Br. at 12, docket #2) Wamser was called to testify against Petitioner at the preliminary hearing in the prior matter, but she refused to testify. Petitioner states that Wamser even assaulted the bailiff so that she would be placed in jail and not have to testify. (*Id.* at 13.) Petitioner asserts that Wamser did not want to testify that Petitioner had been in the house and near her children because Wamser's ex-husband had a restraining order against Petitioner

and Wamser was afraid that she would lose her children if she admitted that Petitioner had been allowed in the home. (*Id*. at 12-13.) Petitioner states that he had a conversation with Wamser and Tim Richardson about these fears. (*Id.* at 13.)

Mark Schropp was Wamser's attorney regarding the resulting assault charges for attacking the bailiff. (*Id.* at 14.) Petitioner asserts that his first attorney, John Greer, was going to call Todd Magoon to testify that Schropp told Wamser to only take cash from Petitioner to pay the bills for the house that she and Petitioner shared so that there was not a "paper trail" to lead back to her and "to hide the fact" that Wamser was sneaking Petitioner in and out of her house since her arrest. (*Id.* at 14.) Petitioner asserts that there were a number of other witnesses whom Greer was going to call to testify that Wamser and he were living together and attempting to hide that fact since the time of her arrest.

Petitioner further asserts that Greer was also going to call Tim Richardson, Tony Mums, the Family Independence Association, Todd Magoon and Carmen Robinson to testify about the events surrounding Wamser's assault and arrest, including that Wamser would rather be arrested than testify that Petitioner had a right to be in the home. (*Id*. at 15.) Petitioner claims that Schropp's representation of Wamser in her assault matter was a conflict of interest because Schropp was unable to use information from those witnesses to elicit testimony from Wamser about her motivation to lie about sneaking Petitioner into her home and about giving her money for household expenses. (*Id.*) Petitioner asserts that Schropp was barred from using that information because of the attorney-client privilege between Wamser and Schropp. (*Id.* at 15-16.)

In his petition, Petitioner describes the testimony that Schropp was able to elicit and the testimony that Petitioner felt Schropp was unable to bring forth because of his prior representation of Wamser:

> Mr. Schropp was attempting to present a defense that Ms. Wamser had motive to lie about Petitioner living in her home in order to keep from losing her children. When he attempted to introduce this defense it was objected to (T1, 155), and Mr. Schropp argued that "it will show motive." Id. Mr. Schropp was able to produce testimony from Ms. Wamser that she was concerned that if Petitioner was around her children that she could lose them. (T1, 157.) But, she claims that Petitioner was never invited into her home by her after January of 2002. (T1, 124-125.) Mr. Schropp was attempting to establish that Ms. Wamser had motive to conceal that Petitioner was in fact living there. Yet, because of his previous representation of Ms. Wamser, he is unable to bring forth the most tell-tale [sic] evidence that Ms. Wamser had this motive; her desire to be arrested rather than testify, and the facts surrounding this event...This representation also had an effect on [Mr. Schropp's] representation in that he failed to present the substantial defense that Ms. Wamser was fabricating her story about the Petitioner not living there to keep from losing her children.

(Br. at 17-18.)

## Discussion

"It has long been recognized that the right of counsel [under the Sixth Amendment] is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). In this matter, Petitioner alleges that he received ineffective assistance of counsel because his attorney had previously represented the victim, who was also a witness. "*Strickland v. Washington*, 466 U.S. 668, 692 (1984), is the controlling authority for an ineffectiveness claim based on a conflict of interest for a successive representation." *Lordi v. Ishee,* 384 F.3d 189 (6th Cir. 2004). In general, a petitioner may prevail on a claim of ineffective assistance of counsel by demonstrating both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced the defendant resulting in an unreliable or

fundamentally unfair outcome. *Strickland*, 466 U.S. at 694. However, in *Strickland*, the Court recognized that "[i]n certain Sixth Amendment contexts, prejudice is presumed." *Id.* at 692. Petitioner has a Sixth Amendment right to conflict-free representation by his counsel. *See Smith v. Anderson*, 689 F.2d 59, 62-63 (6th Cir. 1982); *see also Gillard v. Mitchell*, 445 F.3d 883 (6th Cir. 2006). "To demonstrate that counsel's performance was deficient, a [petitioner] 'must show that counsel's representation fell below an objective standard of reasonableness.' " *Roberts v. Carter*, 337 F.3d 609, 614 (6th Cir. 2003) (quoting *Strickland*, 466 U.S. at 688). To demonstrate prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Wickline v. Mitchell*, 319 F.3d 813, 819 (2003) (quoting *Strickland*, 466 U.S. at 694). A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. A claim of ineffective assistance of counsel presents a mixed question of law and fact. Accordingly, the Court must apply the "unreasonable application" prong of § 2254(d)(1). *See Barnes v. Elo*, 339 F.3d 496, 501 (6th Cir. 2003).

Petitioner asserts that his counsel was ineffective because Schropp was unable to bring forth testimony about why Wamser would have motive to lie about Petitioner having permission to be in her house. Despite Petitioner's assertion, Petitioner clearly stated that "Mr. Schropp was able to produce testimony from Ms. Wamser that she was concerned that if Petitioner was around her children that she could lose them." (Br. at 17.) Therefore, Schropp was able to elicit testimony about Wamser's motive to lie despite Schropp's prior representation of Wamser.

Petitioner also alleges that counsel was ineffective because he did not call additional witnesses to testify about Wamser's motive to lie. Petitioner has not overcome the presumption that Schropp's decision not to call additional witnesses after eliciting testimony about motive from Wamser herself was sound trial strategy. *Strickland*, 466 U.S. at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). Schropp's representation specifically regarding Wamser's motive to lie was reasonable and within the range of professionally competent assistance.

Petitioner argues that evaluation of counsel's conflict of interest is governed by the standard set forth in *Cuylar v. Sullivan,* 446 U.S. 335 (1980). (Br. at 17.) In *Mickens v. Taylor*, 535 U.S. 162 (2002), the Court noted that the case had come before the Court on the unquestioned assumption based on well established circuit court precedent that all attorney conflicts of interest must be considered under *Sullivan*. *See Mickins*, 535 U.S. at 174-75 (citing cases). In dicta, however, the Court observed that *Sullivan* itself did not clearly establish that conflicts of interest other than multiple concurrent representations should be treated under the *Sullivan* rule. *Id.* at 175-76. In *Smith v. Hofbauer*, 312 F.3d 809 (6th Cir. 2002), the Sixth Circuit analyzed the *Mickens*

dicta, holding that it is not clearly established by the Supreme Court for purposes of the AEDPA that the *Sullivan* standard applies to conflicts other than dual representation. *Id.* at 818. As a result, the *Smith* court held that a court must evaluate any conflict of interest situation other than dual representation under the standards of *Strickland* rather than *Sullivan*. Additionally, in *Lordi*, the Sixth Circuit held that *Sullivan* "is inapplicable to cases of successive representation." *Lordi*, 384 F.3d at 193 (citing *McFarland v. Yukins*, 356 F.3d 688, 701) (6th Cir. 2004); *Kohn v. U.S.*, 323 F.3d 445, 460-61 (6th Cir. 2003). Therefore, the *Sullivan* standard does not apply to this case.

Even if Petitioner were entitled to have the *Sullivan* standard apply, he does not raise a meritorious federal claim. The *Sullivan* Court adopted a rule for cases in which a defendant raised no objection at trial to his or her attorney representing co-defendants. In such circumstances, the defendant must do more than demonstrate a potential conflict of interest. *Sullivan*, 446 U.S. at 348. Instead, a defendant "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.*

In *Mickens v. Taylor*, 535 U.S. 162 (2002), the Supreme Court addressed a situation in which defense counsel had previously and recently represented the victim the defendant was charged with killing. The Court clarified the meaning in *Sullivan* of "an actual conflict of interest" that would entitle a defendant to a presumption of prejudice:

> "[A]n actual conflict of interest" meant precisely a conflict *that affected counsel's performance* – as opposed to a mere theoretical division of loyalties. It was shorthand for the statement in *Sullivan* that "a defendant who shows that a conflict of interest *actually affected the adequacy of his representation* need not demonstrate prejudice in order to obtain relief."

*Mickens*, 535 U.S. at 171.

Petitioner cannot establish that counsel labored under an actual conflict of interest that adversely affected counsel's performance. *Mickens v. Taylor*, 535 U.S. 162, 171, 172 n. 5 (2002). As stated above, counsel elicited testimony from his former client that she had reason to lie because she was afraid of losing her children if she admitted that Petitioner was allowed in her house. (Br. at 17.) As a consequence, even if the *Sullivan* standard applied to successive representation, Petitioner would not be entitled to relief.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of the State of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not

warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment consistent with this Opinion will be entered.


Dated: February 3, 2009         /s/ Janet T. Neff
                                Janet T. Neff
                                United States District Judge